In re Andrew Monroe GREGORY and Evie Lynn Gregory, Debtors.

Thomas C. Richardson, Trustee, Plaintiff,

v.

Countrywide Home Loans a/k/a America's Wholesale Lender, Defendant.

Bankruptcy No. 03–07456.
Adversary No. 03–88634.

United States Bankruptcy Court, W.D. Michigan.

Oct. 7, 2004.

Paul F. Davidoff, Esq., Kalamazoo, Michigan, for Thomas C. Richardson, Trustee.

James D. Doezema, Esq., Grand Rapids, Michigan, for Countrywide Home Loans.

### OPINION RE: DEFENDANT COUNTRYWIDE HOME LOAN'S MOTION FOR SUMMARY JUDGMENT

JEFFREY R. HUGHES, Bankruptcy Judge.

Countrywide Home Loans ("Countrywide") claims a lien in real property and a manufactured home affixed to that property. The Chapter 7 trustee asserts that Countrywide's lien in the manufactured home can be avoided because Countrywide failed to have its name added to the certificate of title issued by the State of Michigan with respect to that manufactured home. Countrywide has filed a motion for summary judgment. For the reasons stated in this opinion, Countrywide's motion is granted.

## I.  JURISDICTION

This court has jurisdiction pursuant to 28 U.S.C. § 1334 and Local Rule 83.2 (W.D.Mich.). The controversy between the Chapter 7 trustee and Countrywide is a "core proceeding." 28 U.S.C. § 157(b)(2)(K). Therefore, the order entered in conjunction with this opinion is appealable to the district court pursuant to 28 U.S.C. § 158.

## II.  BACKGROUND

The facts are not in dispute.  Andrew and Evie Gregory filed a petition for relief under Chapter 7 of the Bankruptcy Code [1] on June 12, 2003.  The Gregorys' assets included real property in Calhoun County, Michigan and a 1998 Fortune manufactured home located on that property. Each of these assets became property of the estate upon the commencement of the Gregorys' bankruptcy case.  11 U.S.C. § 541(a)(1).

The Gregorys granted a mortgage to Countrywide on November 13, 1998, more than four years before their bankruptcy petition.[2]  The property described in the mortgage is the Calhoun County property. The mortgage does not specifically describe the 1998 Fortune manufactured home.  However, the mortgage does include within its scope all "fixtures now or hereafter a part of the property."  The Chapter 7 trustee agrees that the 1998 Fortune manufactured home is a fixture of the Calhoun County property and that it is subject to the lien created by the November 13, 1998 mortgage to Countrywide. The Chapter 7 trustee also agrees that Countrywide properly recorded the November 13, 1998 mortgage with the Calhoun County Register of Deed's office and that the mortgage was recorded long before the 90–day preference period that immediately preceded the Gregorys' June 12, 2003 petition for relief.

On September 24, 2003, the Chapter 7 trustee commenced this adversary proceeding against Countrywide.  The adversary proceeding seeks to avoid Countrywide's mortgage lien in the Gregorys' manufactured home and to preserve that avoided lien for the benefit of the estate.[3] The Chapter 7 trustee contends that Countrywide's lien in the manufactured home is avoidable because Countrywide's name does not appear on the certificate of title for the manufactured home.  The Chapter 7 trustee makes this contention based upon his rights as a hypothetical lien creditor pursuant to 11 U.S.C. § 544(a)(1).  The Chapter 7 trustee also cites *Boyd v. Chase Manhattan Mortgage Corp. (In re Kroskie)*, 315 F.3d 644 (6th Cir.2003).

I heard Countrywide's motion for summary judgment on June 3, 2004. Two issues have been raised in connection with that motion.  The first issue is whether the Michigan legislature's amendment of the Mobile Home Commission Act in 2003, Mich. Comp. Laws Ann. § 125.2330i, negates the application of *Kroskie* in this instance.  The second is whether the Michigan legislature's enactment in 2001 of "Revised Article 9" of the Uniform Commercial Code, Mich. Comp. Laws Ann. §§ 440.9101–440.9709, negates the application of *Kroskie* in this instance.

I took the matter under advisement at the conclusion of the June 3, 2004 hearing. The parties agreed that my decision with respect to Countrywide's motion for summary judgment would be dispositive of the

---

1.  11 U.S.C. §§ 101–1330.

2.  The mortgage was actually granted to America's Wholesale Lender. Countrywide has represented, and the Chapter 7 trustee apparently agrees, that America's Wholesale Lender is an assumed name of Countrywide.

3.  Debtors' schedules also identify Conseco Finance Servicing Corp. as a secured creditor with a lien in the Gregorys' real property and the certificate of title for the 1998 Fortune manufactured home identifies Conseco as a secured creditor claiming an interest in that manufactured home.  Conseco is not a party to this adversary proceeding.  Therefore, whatever dispute, if any, there may be between Countrywide and Conseco concerning the relative priority of their liens in the manufactured home is not resolved by this opinion.

adversary proceeding.[4] I gave the parties the opportunity to file post-hearing briefs on the two issues discussed at the June 3, 2004 hearing. Both parties availed themselves of the opportunity.

## III. DISCUSSION

### A. Michigan Compiled Law § 125.2330i.

The first issue raised by Countrywide is whether the recent amendment of the Mobile Home Commission Act, Mich. Comp. Laws Ann. § 125.2301, et seq., changes the outcome of this adversary proceeding from that which is required by the Sixth Circuit's opinion in Kroskie. The amendment adds a new section to the series of provisions in the Mobile Home Commission Act that relate to title certification for mobile homes. This new section permits an owner of a mobile home who has affixed it to real property also owned by that person to remove the mobile home from the title certification requirements of the Mobile Home Commission Act. Mich. Comp. Laws Ann. § 125.2330i.[5] The amendment took immediate effect on July 14, 2003.

The parties agree that the amendment itself is irrelevant to the disposition of the instant case. What has caught the eye of Countrywide is a comment the Michigan legislature included in the legislative history relating to the enactment of Mich. Comp. Laws Ann. § 125.2330i. The comment, which is entitled "Enacting section 1" states that:

[i]t is the intent of this legislature that a security interest or lien on a mobile home affixed to real property may be perfected in the manner provided under law for perfecting a lien on real property, and not exclusively by a notation of the security interest or lien on the certificate of title.

2003 Mich. Pub. Acts 44.

Countrywide argues that Kroskie is no longer controlling because this enacting section eliminates the confusion as to what was the Michigan legislature's intent with respect to the perfection of liens in mobile homes that are affixed to real property.

Countrywide's argument is compelling at first blush. The Sixth Circuit's decision in Kroskie is premised upon its conclusion that there was a conflict between the Mobile Home Commission Act and general real property law. In other words, the legislative scheme was ambiguous. The Sixth Circuit resolved the ambiguity by concluding that the Michigan legislature's intent was to make the title certification procedure set forth in the Mobile Home Commission Act the exclusive method for perfecting a security interest in a mobile home regardless of whether the mobile home was affixed or not to the underlying real estate. Kroskie, at 646–48.

█ Countrywide asserts that the Michigan legislature's inclusion of this enacting section with its 2003 amendment of the Mobile Home Commission Act makes it no

---

4. Trial of the adversary proceeding was scheduled for August 2004. The agreement reached by the parties at the June 3, 2004 hearing is of no consequence given my decision to grant Countrywide's motion. However, the agreement would have been relevant had I denied Countrywide's motion, for the effect of the parties' agreement would have been the immediate entry of a judgment in favor of the Chapter 7 trustee without the necessity of a trial.

5. The amendment also permits a holder of a lien or security interest in an "affixed" mobile home and the underlying real property to remove the mobile home from the title requirements for that mobile home through a real property foreclosure or a deed in lieu of foreclosure. Finally, the amendment permits the owner of a mobile home to secure a new certificate of title for the mobile home in the event the owner later detaches it from the underlying real property.

longer necessary for the courts to guess how the Michigan legislature intended to resolve the conflict the Sixth Circuit identified in *Kroskie*. Moreover, Countrywide asserts that this expression of the Michigan legislature's intent should be given retroactive effect in the sense that the enacting section should be applied whenever a court is now called upon to resolve the ambiguity identified in *Kroskie*. Countrywide makes this argument, of course, because the lien the Chapter 7 trustee is attempting to avoid was created almost five years before this clarification by the Michigan legislature.

The flaw in Countrywide's argument is that it assumes that the enacting section added to the bill giving rise to Mich. Comp. Laws Ann. § 125.2330i should be given any weight at all. Countrywide argues that the statement of legislative intent, as set forth in the enacting section, should be "considered proper legislation" and "should be given the same effect as any other statute would be given effect." [6] However, Michigan law is quite clear that enacting sections such as the one included with the bill to amend the Mobile Home Commission Act, 2003 Mich. Pub. Acts 44, are not to be treated as statutory enactments or as anything similar to a statutory enactment. Countrywide cites 1967 Michigan Attorney General Opinion No. 4576 as support for its contention. However, that opinion in fact sets forth the reasons why an enacting section may not be considered the equivalent of a statute. Article IV, Section 22, of the Michigan Constitution of 1963, requires that all legislation shall be by bill. The bill in this instance is what has now become Mich. Comp. Laws Ann. § 125.2330i. That bill does not include the separate "enacting" language upon which Countrywide relies to make its argument. The fact that this additional language is prefaced with the title "Enacting section 1" and that it appears in the Michigan Compiled Laws as a "Historical and Statutory Note" rather than as part of the enacted amendment reinforces my conclusion that the Michigan legislature never intended this additional comment to be a statutory enactment itself.

■ The Attorney General's opinion correctly states that written expressions of the legislature's intent that are included with the enacted statute may be relevant for purposes of later interpreting that statute if its language is unclear or ambiguous. Op. Att'y Gen. 4576 (1967). However, the language of Mich. Comp. Laws Ann. § 125.2330i is not ambiguous.[7] Moreover,

---

6. *See*, Countrywide's July 2, 2004 Supplemental Brief, p. 1.

7. Countrywide suggests that Mich. Comp. Laws Ann. § 125.2230i(6) is in fact ambiguous and that the "enacting section" to Mich. Comp. Laws Ann. § 125.2330i clarifies that ambiguity. I disagree. Mich. Comp. Laws Ann. § 125.2330i(6) is clear on its face, particularly when it is read in conjunction with Mich. Comp. Laws Ann. § 125.2330i(7). Indeed, subsection (6) states what should be obvious: that a mortgagee who claims a lien in both land and a manufactured home that has become a fixture on that land should be able to take title to both the land and the affixed manufactured home through a single foreclosure sale or a deed in lieu of foreclosure as opposed to having to hold a separate Article 9 sale with respect to the manufactured home. Moreover, even if Mich. Comp. Laws Ann. § 125.2330i(6) were ambiguous, "Enacting section I" offers no interpretative assistance, for it relates to perfection of the lender's secured interest. "Perfection" is a term of art used in secured creditor law to establish the priority of competing Article 9 security interests in the same collateral. In contrast, Mich. Comp. Laws Ann. § 125.2330i(6) refers to a particular creditor's effort to acquire the debtor's separate ownership interest in the collateral through either a foreclosure proceeding or a deed in lieu of foreclosure.

As an alternative, Countrywide suggests that Mich. Comp. Laws Ann. § 125.2330i(6)

the enacting section does not relate to any particular provision of Mich. Comp. Laws Ann. § 125.2330i. Therefore, its usefulness as an interpretative aid is cast even further into doubt.

A legislature speaks through its statutes in the same manner as contracting parties speak through the terms of their written contract. The goal of all contracting parties is to confine their mutual understanding within the four corners of a written agreement. There are nevertheless occasions when the language of that agreement is ambiguous. A court in such instances must by necessity rely upon parol evidence to determine what the parties intended. However, the parol evidence the court is to use is that which evidences the parties' intent **at the time the written agreement was executed** and not that which evidences their intent several years after the fact. This is not to say, of course, that the parties are prohibited from changing their minds as to what they had previously intended. Indeed, the parties themselves can clear up an ambiguity by simply agreeing to eliminate it. However, if they are able to reach such an agreement, the proper recourse is for the parties to amend the agreement. Anything less makes their expressed intentions irrelevant.

The same is true of the Michigan legislature. At the time *Kroskie* was decided, the Michigan legislature had established a statutory scheme with respect to security interests claimed in mobile homes. The Sixth Circuit was called upon to apply that scheme to a particular dispute and concluded that there was an ambiguity in the applicable statutes. Accordingly, it interpreted those statutes based upon what it perceived was the Michigan legislature's intention at the time it enacted the more recent statute, that being the Mobile Home Commission Act.

■ "Enacting section 1" certainly suggests that a later session of the Michigan legislature was dissatisfied with the Sixth Circuit's interpretation of its enactments. However, it is too late for the Michigan legislature to correct that interpretation through an after-the-fact "clarification" of its prior intent. If the Michigan legislature wishes to change *Kroskie*, it must do so through a properly enacted statute. Indeed, as I explain in the remainder of my opinion, that is exactly what the Michigan legislature accomplished on July 1, 2001, when it replaced the then existing Article 9 of the Uniform Commercial Code with Revised Article 9.

B. *Revised Article 9 of the Uniform Commercial Code.*

*Kroskie* is factually identical with the case at hand. Damon and Regina Kroskie, who were Chapter 7 debtors, owned real property in Wexford County, Michigan, and a mobile home located on that property. Chase Manhattan Mortgage Corporation had a mortgage in the real property and its mortgage included fixtures. However, Chase Manhattan's name did not appear on the certificate of title for the mobile home. The bankruptcy court for this district avoided Chase Manhattan's lien in the mobile home based upon the same theory propounded by the Chapter 7 trustee in this instance. *See, Boyd v. Chase*

reverses *Kroskie* even without taking into consideration "Enacting section 1." Again, I disagree. As already discussed, this subsection of the amendment simply offers a mortgagee with an interest in both land and a manufactured home affixed to that land an opportunity to acquire title from the owner of both the land and the fixture through a single procedure. Consequently, the remedy provided by the subsection is unrelated to the issue raised by the parties in *Kroskie*, that being the relative priority of their competing liens in the manufactured home.

*Manhattan Mortgage Corp. (In re Kroskie)*, 258 B.R. 676 (Bankr.W.D.Mich.2001). This court granted the Chapter 7 trustee's motion for summary judgment. It determined that the mobile home was a fixture for purposes of Chase Manhattan's mortgage but that Chase Manhattan's lien was nonetheless avoidable because Chase Manhattan had not perfected that lien by having its name added to the Kroskies' certificate of title for the mobile home.

The district court, on appeal, reversed and the Sixth Circuit then reversed that court. The Sixth Circuit panel, in a 2–1 decision, concluded that the exclusive method for perfecting a security interest in a mobile home in Michigan was through compliance with the applicable certificate of title provisions of the Mobile Home Commission Act, Mich. Comp. Laws §§ 125.2330d. *In re Kroskie*, 315 F.3d at 646–648. It then determined that the Chapter 7 trustee, as a hypothetical judgment lien creditor, prevailed over Chase Manhattan because Chase Manhattan had not perfected its lien in the mobile home through this exclusive method. *Id.* at 648–49.

However, *Kroskie* was decided based upon law that is no longer applicable. The Michigan legislature amended the Uniform Commercial Code in 2000 to replace former Article 9 in its entirety with so-called "Revised Article 9," 2000 Mich. Pub. Act 348. Revised Article 9, Mich. Comp. Laws Ann. §§ 440–9101—440.709, became effective on July 1, 2001. Although that effective date preceded the Sixth Circuit's *Kroskie* opinion by over a year and a half, the rules adopted in conjunction with the enactment of Revised Article 9 required the Sixth Circuit to continue referring to for-

mer Article 9 for purposes of analyzing the issues presented in *Kroskie*.

> This amendatory act [Revised Article 9] does not affect an action, case, or proceeding commenced before this amendatory act takes effect.

Mich. Comp. Laws Ann. § 440.9702(3).

The Kroskies' Chapter 7 proceeding was commenced on November 18, 1999 and the Chapter 7 trustee's adversary proceeding against Chase Manhattan was commenced on May 11, 2000.[8]

In contrast, the matter before me is clearly governed by Revised Article 9. Although the transaction in question (*i.e.,* the creation and recording of the lien now challenged by the Chapter 7 trustee) occurred over a year before Revised Article 9 was enacted and over two years before Revised Article 9 became effective, Revised Article 9 nonetheless is the applicable law in this instance.

> Except as otherwise provided in this part, this amendatory act applies to a transaction or lien within its scope, **even if the transaction or lien was entered into or created before this amendatory act takes effect.**

Mich. Comp. Laws Ann. § 440.9702(1) (emphasis added).

This case is distinguished from *Kroskie* because the Gregorys did not commence their bankruptcy proceeding until June 12, 2003, well after Revised Article 9 became effective. Therefore, the exception to Revised Article 9 that required the Sixth Circuit in *Kroskie* to refer to former Article 9 does not apply in this case.

Revised Article 9 applies to transactions that create "a security interest in personal property or fixtures by contract." Mich.

---

**8.** The Sixth Circuit did refer once in *Kroskie* to Mich. Comp. Laws Ann. § 440.9317, which is Section 9–317 of Revised Article 9. *Id.* at 648. However, it appears that the reference was inadvertent, for it is the only reference in *Kroskie* to Revised Article 9. All other references in *Kroskie* to the Uniform Commercial Code are to former Article 9.

Comp. Laws Ann. § 440.9109(1)(a).[9] A security interest in a mobile, modular, or manufactured home clearly falls within the scope of Revised Article 9. Indeed, "manufactured home" is a defined term.

"Manufactured home" means a structure, transportable in 1 or more sections, which, in the traveling mode, is 8 body feet or more in width or 40 body feet or more in length, or when erected on site, is 320 or more square feet, and which is built on a permanent chassis and designed to be used as a dwelling with or without a permanent foundation when connected to the required utilities, and includes the plumbing, heating, air-conditioning, and electrical systems contained therein. The term includes any structure that meets all of the requirements of this paragraph except the size requirements and with respect to which the manufacturer voluntarily files a certification required by the secretary of the department of housing and urban development and complies with the standards established under title 42 of the United States Code.

Mich. Comp. Laws Ann. § 440.9102(1)(aaa).

An Article 9 security interest may be created in a manufactured home when it is personal property or after it has become so attached to real property that the manufactured home has become a fixture. Mich. Comp. Laws Ann. § 440.9109(1)(a).

The Mobile Home Commission Act, Mich. Comp. Laws Ann. § 125.2301 *et seq.*, also governs manufactured homes. "Mobile home," which is the term of art used in that act, has a meaning similar to the term "manufactured home" as used in Revised Article 9.

"Mobile home" means a structure, transportable in 1 or more sections, which is built on a chassis and designed to be used as a dwelling with or without permanent foundation, when connected to the required utilities, and includes the plumbing, heating, air-conditioning, and electrical systems contained in the structure.

Mich. Comp. Laws Ann. § 125.2302(g).

Revised Article 9 and the Mobile Home Commission Act are congruous with respect to the creation and enforcement of a security interest in a manufactured or mobile home governed by these acts. The two acts intersect because of the certificate of title requirements of the Mobile Home Commission Act, Mich. Comp. Laws Ann. § 125.2330—125.2330i. The Mobile Home Commission Act requires that a certificate of title issued pursuant to that act disclose on its face "a statement of all security interests in the mobile home" as set forth in the application for title or as set forth on the back of an endorsed certificate of title. Mich. Comp. Laws Ann. § 125.2330b (2). *See also,* Mich. Comp. Laws Ann. § 125.2330b (3), 125.2330c (3)—(5), and 125.2330d (1)(a). The Mobile Home Commission Act also requires that a new certificate of title be issued whenever the owner named on the certificate "creates a security interest" in the mobile home subject to the certificate. Mich. Comp. Laws Ann. 125.2330d(1).

However, the intersection of the Mobile Home Commission Act and Revised Article 9 does not extend beyond issues regarding the perfection of an Article 9 security interest in a manufactured or mobile home. The Mobile Home Commission Act does

---

**9.** Revised Article 9 also applies to (1) agricultural liens; (2) sales of accounts, chattel paper, payment intangibles, or promissory notes; (3) consignments; and (4) security interests arising under Articles 2, 2A, 4, and 5 of the Uniform Commercial Code. Mich. Comp. Laws Ann. § 440.9102(1)(b)—(f).

not state, for example, how a security interest in a mobile home is to be created. Nor does the Mobile Home Commission Act state how a security interest in a mobile home is to be enforced. These issues are addressed instead by Revised Article 9. Indeed, Revised Article 9 governs all issues related to a security interest in a manufactured home with the exception of how the security interest in the manufactured home is to be perfected and the duration and renewal of that perfection.

> Except as otherwise provided in subsection (4) [10] and section 9316(4) and (5),[11] duration and renewal of perfection of a security interest perfected by compliance with [Sections 30 through 30h of the Mobile Home Commission Act] are governed by [Sections 30 through 30h of the Mobile Home Commission Act]. **In other respects, the security interest is subject to this article.**

Mich. Comp. Laws Ann. § 440.9311(3) (footnotes and emphasis added).[12]

Revised Article 9 and the Mobile Home Commission Act are also congruous with respect to how a security interest in a manufactured or mobile home is to be perfected. Revised Article 9 clearly provides that compliance with the title certificate requirements of the Mobile Home Commission Act is the exclusive method for a secured creditor to perfect an Article 9 security interest in a manufactured or mobile home.

> (1) Except as otherwise provided in subsection (4), the filing of a financing statement is not necessary or effective to perfect a security interest in property subject to one or more of the following:
>
> \*       \*       \*       \*       \*       \*
>
> (b) The following statutes of this state:
>
> \*       \*       \*       \*       \*       \*
>
> (iv) Sections 30 through 30h of the mobile home commission act, 1987 PA 96, MCL 125.2330 to 125.2330h.
>
> \*       \*       \*       \*       \*       \*
>
> (2) Compliance with a statute, regulation, or treaty described in subsection (1) is equivalent to the filing of a financing statement under this article. Except as otherwise provided in subsection

---

10. Mich. Comp. Laws Ann. 440.9311(4) relates to security interests in titled goods held as inventory.

11. Mich. Comp. Laws Ann. 440.9316(4) and (5) relate to the perfection of a security interest in goods subject to Michigan's title statutes that have been brought into Michigan from another jurisdiction.

12. The Sixth Circuit framed the issue before it in *Kroskie* as whether or not "[t]he MHCA [Mobile Home Commission Act] provides the exclusive method for perfecting a security interest in a mobile home." *Id.* at 646. The issue arose because of the "clash between the MHCA [the Mobile Home Commission Act] and Michigan's general real property law." *Id.* at 647. The Sixth Circuit resolved this "clash" by applying a rule of construction for interpreting conflicting statutes. It concluded that the specific statutory provisions of the

Mobile Home Commission Act prevailed over general real property law. *Id.*

However, the Michigan legislature's enactment of Revised Article 9 has changed the issue, for Revised Article 9, which was enacted approximately 13 years after the Mobile Home Commission Act, clearly states that the Mobile Home Commission Act relates to Article 9 security interests only with respect to the questions of whether the security interest in the mobile home is perfected and the duration and renewal of that perfection. "In other respects, the security interest is subject to this article [Revised Article 9]." Mich. Comp. Laws Ann. § 440.9311(4). Therefore, the "clash" is no longer between the Mobile Home Commission Act and real property law. The conflict is now between Revised Article 9 and real property law.

(4) [13] and sections 9313 and 9316(4) and (5) [14] for goods covered by a certificate of title, a security interest in property subject to a statute, regulation, or treaty described in subsection (1) may be perfected only by compliance with the statute, regulation, or treaty, and a security interest so perfected remains perfected notwithstanding a change in the use or transfer of possession of the collateral.

Mich. Comp. Laws Ann. § 440.9311(1) and (2) (footnotes added).[15]

The Mobile Home Commission Act complements Mich. Comp. Laws Ann. § 440.9311(2):

The filing under this section or under section 30a of an application for a certificate of title showing the name and address of the holder of a security interest in a mobile home is equivalent to the filing of a financing statement with respect to the security interest under article 9 of the uniform commercial code, Act. No. 174 of the Public Acts of 1962, being sections 440.9101 to 440.9994 of the Michigan Compiled Laws.

Mich. Comp. Laws Ann. § 125.2330d (3).

Put simply, Revised Article 9 and the Mobile Home Commission Act combine to create a system whereby a creditor may take an Article 9 security interest in a manufactured home either when the manufactured home stands alone as an item of personal property or when it has become a fixture attached to real property. Creation and enforcement of the Article 9 security interest is governed by Revised Article 9 itself. However, what constitutes perfection of the Article 9 security interest created is governed by the Mobile Home Commission Act.

The Chapter 7 trustee in the instant case relies upon the perfection requirements of the Mobile Home Commission Act to challenge the lien claimed by Countrywide in the Gregorys' manufactured home. Keep in mind that the Chapter 7 trustee's argument does not challenge the validity of Countrywide's mortgage lien in the Gregorys' manufactured home. The Chapter 7 trustee concedes that Countrywide has an enforceable lien in the Gregorys' manufactured home because of the Gregorys' execution of the November 13, 1998 mortgage and the mortgage's inclusion of all fixtures. He does not argue, for example, that the November 13, 1998 mortgage was not properly executed or that no consideration was exchanged to support it.

The Chapter 7 trustee instead argues that Countrywide's otherwise enforceable mortgage lien in the Gregorys' manufactured home is avoidable because of the so-called "strong-arm powers" granted to him pursuant to 11 U.S.C. § 544. The specific power that the Chapter 7 trustee relies upon is set forth in subsection (a)(1).

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

---

**13.** Subsection 9311(4) of Mich. Comp. Laws Ann. § 440.9311 permits perfection of a security interest by the filing of a financing statement if the manufactured/mobile home is held by the owner as inventory.

**14.** Mich. Comp. Laws Ann. §§ 9313 and 9316(4) and (5) permit a secured creditor to perfect its security interest in a manufactured/mobile home by taking possession under certain circumstances.

**15.** *See also*, Mich. Comp. Laws Ann. § 440.9310(2)(c).

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

\* \* \* \* \* \*

11 U.S.C. § 544(a)(1).

The rights given to the Chapter 7 trustee by Section 541(a)(1) are often described as those of a hypothetical judgment lien creditor.

■ However, Section 544(a)(1), standing alone, does not accomplish what the Chapter 7 trustee intends in this adversary proceeding. Section 544(a)(1) is nothing more than an enabling statute. It permits the Chapter 7 trustee to act as if he were a judgment lien creditor of the debtor with respect to transfers of property by the debtor. However, Section 544(a)(1) does not state what the judgment lien creditor's rights might be with respect to such transfers. Those rights are instead established by applicable state law. It is at this point that the Bankruptcy Code and the Uniform Commercial Code intersect.

Perfection is a term of art adopted by the drafters of the Uniform Commercial Code. The "perfection" of a secured credi-

tor's Article 9 security interest in collateral establishes that creditor's rights in the collateral vis-a-vis other competing Article 9 secured creditors and judgment lien creditors in the same collateral. In fact, it is Mich. Comp. Laws Ann. § 440.9317(1)(b) that empowers the Chapter 7 trustee in this instance to use his Section 544(a)(1) status as a hypothetical judgment lien creditor to challenge Countrywide's lien.

(1) A security interest or agricultural lien is subordinate to the rights of 1 or more of the following:

\* \* \* \* \* \*

(b) Except as otherwise provided in subsection (5),[16] **a person that becomes a lien creditor before the earlier of the following:**

(*i*) **The time the security interest or agricultural lien is perfected.**

(*ii*) The time 1 of the conditions specified in section 9203(2)(c)[17] is met and a financing statement covering the collateral is filed.

Mich. Comp. Laws Ann. § 440.9317(1) (footnotes and emphasis added).

Although the Chapter 7 trustee has not articulated his complaint in this fashion, his action against Countrywide in this instance derives from the priority granted by Mich. Comp. Laws Ann. § 440.9317(1)(b) to judgment lien creditors over creditors claiming an unperfected security interest in the same property.[18]

---

**16.** Subsection (5) of Mich. Comp. Laws Ann. § 440.9317 allows a secured creditor claiming a purchase money security interest who files a financing statement within 20 days of the debtor receiving delivery of the collateral to claim priority over any lien creditor whose interest arose between the time the security interest attaches and the time of filing. Mich. Comp. Laws Ann. § 440.9317(5).

**17.** Mich. Comp. Laws Ann. § 440.9203(2)(c) sets forth four separate conditions. One of these conditions must be met, together with

the two conditions set forth in subparts (2)(a) and (2)(b) of that section, before an Article 9 security interest can be enforced.

**18.** Technically, a bankruptcy trustee does not even have to rely upon 11 U.S.C. § 544(a)(1) to prevail over a creditor claiming an unperfected security interest in personal property or fixtures. "Lien creditor," like so many other terms in Revised Article 9, is defined. A lien creditor includes a judgment lien creditor. Mich. Comp. Laws Ann. § 440.9102(1)(zz)(*i*). However, a lien credi-

The Chapter 7 trustee in effect is arguing that Section 544(a)(1) gave him a judgment lien in the Gregorys' manufactured home that arose on June 12, 2003, that being the date of the Gregorys' bankruptcy petition, and that his judgment lien has priority over the lien claimed by Countrywide in the manufactured home because Countrywide's lien was not perfected on the date the Chapter 7 trustee's judgment lien "arose" (*i.e.*, June 12, 2003). The consequence of the Chapter 7 trustee's argument, if successful, would be the subordination of Countrywide's lien to his hypothetical lien, Mich. Comp. Laws Ann. § 440.9317(1)(b), and the attendant augmentation of the Chapter 7 bankruptcy estate. 11 U.S.C. § 551.

There is no question that the Chapter 7 trustee's effort to avoid Countrywide's lien would have been successful had the Gregorys not owned the land upon which their manufactured home was affixed. For example, suppose the Gregorys' manufactured home was located in a mobile home park and the Gregorys leased the lot upon which it was placed. If the Gregorys had borrowed money from Countrywide under those circumstances, the Gregorys and Countrywide would have executed a security agreement and an Article 9 security interest in personal property would have been created. Mich. Comp. Laws Ann. § 440.9109(1)(a). Countrywide would have also had to comply with the certificate of title provisions of Section 2330d of the Mobile Home Commission Act in order to perfect the Article 9 security interest it had procured. Mich. Comp. Laws Ann. § 440.9311(1) and (2). If Countrywide had not perfected its Article 9 security interest by the date the Gregorys filed their bankruptcy petition, the Chapter 7 trustee, as a

hypothetical judgment lien creditor, would have been able to effectively eliminate Countrywide's security interest because of the priority given to him pursuant to Mich. Comp. Laws Ann. § 440.9317(1)(b).

However, in the instant case, the Gregorys' home is a fixture and Revised Article 9 is not the exclusive method through which a creditor may create a lien in that fixture. Again, Revised Article 9 is quite clear that an Article 9 security interest may be created in a fixture. Mich. Comp. Laws Ann. § 440.9109(1)(a). However, Revised Article 9 is equally clear that a security interest in a fixture may also be created through the application of real property law.

> This article [Revised Article 9] does not prevent the creation of an encumbrance upon fixtures under real property law.

Mich. Comp. Laws Ann. § 440.9334(2).

> "Encumbrance" means a right, other than an ownership interest, in real property. The term includes mortgages and other liens on real property.

Mich. Comp. Laws Ann. § 440.9102(1)(ff).

In the instant case, an "encumbrance" upon the Gregorys' manufactured home has in fact been created by operation of real property law. The parties agree that the Gregorys granted to Countrywide a mortgage in the real property upon which the manufactured home is placed and that the manufactured home has become a fixture with respect to that property. Moreover, the parties agree that the November 13, 1998 mortgage includes within its scope all fixtures located on the real property described. Finally, it is well settled in Michigan that a lien created by a mortgage granted under real property law may include fixtures located on the mortgaged

tor is also "[a] trustee in bankruptcy from the date of the filing of the petition." Mich.

Comp. Laws Ann. § 440.9102(1)(zz)(*iii*).

property, *See, Tyler v. Hayward,* 235 Mich. 674, 676, 209 N.W. 801 (1926).

Fixtures, therefore, cause yet another intersection between Revised Article 9 and other applicable law. Section 9–334 of Revised Article 9 [19] is the traffic signal at this intersection. It establishes under what circumstances a lien that has been created in a fixture as a result of real property law (*e.g.,* a mortgage lien) will have priority over an Article 9 security interest in that same fixture and under what circumstances the Article 9 security interest will prevail. Subsection (3) establishes the general rule that an Article 9 security interest in a fixture is to be subordinate to a mortgage lien in that same fixture.

> (3) In cases not governed by subsections (4) through (8), a security interest in fixtures is subordinate to a conflicting interest of an encumbrancer or owner of the related real property other than the debtor.

Mich. Comp. Laws Ann. § 440.9334(3).

Subsections (4) through (8) in turn establish exceptions to the general rule established in subsection(3).[20]

---

**19.** Mich. Comp. Laws Ann. § 440.9334.

**20.** (4) Except as otherwise provided in subsection (8), a perfected security interest in fixtures has priority over a conflicting interest of an encumbrancer or owner of the real property if the debtor has an interest of record in or is in possession of the real property and all of the following are met:
(a) The security interest is a purchase-money security interest.
(b) The interest of the encumbrancer or owner arises before the goods become fixtures.
(c) The security interest is perfected by a fixture filing before the goods become fixtures or within 20 days thereafter.
(5) A perfected security interest in fixtures has priority over a conflicting interest of an encumbrancer or owner of the real property in each of the following circumstances:
(a) If the debtor has an interest of record in the real property or is in possession of the real property, and the security interest is perfected by a fixture filing before the interest of the encumbrancer or owner is of record and has priority over any conflicting interest of a predecessor in title of the encumbrancer or owner.
(b) If before the goods become fixtures, the security interest is perfected by any method permitted by this article and the fixtures are readily removable factory or office machines, readily removable equipment that is not primarily used or leased for use in the operation of the real property, or readily removable replacements of domestic appliances that are consumer goods.
(c) If the conflicting interest is a lien on the real property obtained by legal or equitable proceedings after the security interest was perfected by any method permitted by this article.
(d) If the security interest is created in a manufactured home in a manufactured-home transaction and perfected pursuant to a statute described in section 9311(1)(b).
(6) A security interest in fixtures, whether or not perfected, has priority over a conflicting interest of an encumbrancer or owner of the real property if either of the following is met:
(a) The encumbrancer or owner has, in an authenticated record, consented to the security interest or disclaimed an interest in the goods as fixtures.
(b) The debtor has a right to remove the goods as against the encumbrancer or owner.
(7) The priority of the security interest under subsection (6)(b) continues for a reasonable time if the debtor's right to remove the goods as against the encumbrancer or owner terminates.
(8) A mortgage is a construction mortgage to the extent that it secures an obligation incurred for the construction of an improvement on land, including the acquisition cost of the land, if a recorded record of the mortgage so indicates. Except as otherwise provided in subsections (5) and (6), a security interest in fixtures is subordinate to a construction mortgage if a record of the mortgage is recorded before the goods become fixtures and the goods become fixtures before the completion of the construction. A mortgage has this priority to the same extent as a construction mortgage to the extent that it is given to refinance a construction mortgage.

The Chapter 7 trustee argues that the exception provided by subsection (5)(d) "clearly provides that in order to perfect a security interest in a mobile home affixed to real property, compliance with the provisions of the Mobile Home Commission Act is required." Trustee's July 6, 2004 Post–Hearing Brief, p. 6. However, subsection (5) creates only a limited exception for Article 9 security interests in manufactured homes that have become fixtures on mortgaged property.

> (5) A perfected security interest in fixtures has priority over a conflicting interest of an encumbrancer or owner of the real property in each of the following circumstances:
>
> \*    \*    \*    \*    \*    \*
>
> (d) If the security interest is created in a manufactured home in a manufactured-home transaction and perfected pursuant to a statute described in section 9311(1)(b).

Mich. Comp. Laws Ann. § 440.9334(5)(d).

The Chapter 7 trustee does not qualify for this limited exception. First, Mich. Comp. Laws Ann. § 440.9334(5)(d) requires the holder of the Article 9 security interest itself to have perfected its own interest in the manufactured home by complying with the certificate of title requirements of the Mobile Home Commission Act. The Chapter 7 trustee clearly has not done so. Nor can the Chapter 7 trustee assert that "title perfection" in the Gregorys' manufactured home is an attribute that may be assumed because of his hypothetical status under Section 544(a)(1). The Chapter 7 trustee is a hypothetical judgment lien creditor, not a hypothetical secured creditor. In Michigan, judgment liens arise as the result of an execution or levy. No perfection of a judgment lien is

required. The court officer simply liquidates the levied property and accounts to the judgment creditor for its lien against the same.

Second, the Chapter 7 trustee's hypothetical lien does not, as required by Mich. Comp. Laws Ann. § 440.9334(5)(d), arise as the result of a "manufactured home transaction."

> "Manufactured-home transaction" means a secured transaction that creates a purchase money security interest in a manufactured home ... or in which a manufactured home ... is the primary collateral.

Mich. Comp. Laws Ann. § 440.9102(1)(bbb).

The operative word is "transaction." Webster's Dictionary defines "transact" as "to carry on business" and a "transaction" as "something transacted; *esp:* a business deal." [21] Again, the Chapter 7 trustee is a hypothetical judgment lien creditor, not a hypothetical secured creditor. His lien arises by operation of law in connection with the enforcement of judgments. It is clearly not the product of a business deal.

This last point exposes an even greater problem with the Chapter 7 trustee's position. Revised Article 9 is intended primarily to address liens created in personal property or fixtures that arise as the consequence of an agreement between a creditor and the owner of the collateral. With the exception of agricultural liens, sales of accounts, and liens arising under other provisions of the Uniform Commercial Code, the scope of Revised Article 9 is limited to security interests that arise as the result of contractual activity.

> [T]his article [Revised Article 9] applies to all of the following:

---

Mich. Comp. Laws Ann. § 440.9334(4) through (8).

**21.** Webster's Ninth New Collegiate Dictionary (1989).

(a) A **transaction,** regardless of its form, that creates a security interest in personal property or fixtures **by contract.**

Mich. Comp. Laws Ann. § 440.9109(1)(a) (emphasis added).

> With few exceptions (non-consensual agricultural liens being one), this Article applies only to **consensual** security interests in personal property.

Official Comments, UCC § 9–109 (Revised), n. 10 (emphasis added).

■ The Chapter 7 trustee's effort to avoid Countrywide's valid mortgage lien in the Gregorys' manufactured home rests upon the false premise that a Chapter 7 trustee may use his Section 544(a)(1) "strong arm" power as a hypothetical judgment lien creditor to set aside any lien in a fixture that is not perfected. The Chapter 7 trustee's power is not that broad. His power as a hypothetical judgment lien creditor is limited to only unperfected **Article 9 security interests,** for only unperfected Article 9 security interests are subordinate to the lien of a judgment creditor.

> A security interest . . . is subordinate to the rights of . . .
>
> > (b) . . . a person that becomes a lien creditor before . . .
> >
> > > (i) The time the **security interest** . . . is perfected.

Mich. Comp. Laws Ann. § 440.9317(1)(b) (emphasis added).[22]

In other words, the power of a bankruptcy trustee to subordinate unperfected security interests in personal property or fixtures pursuant to Mich. Comp. Laws Ann. § 440.9317(1)(b) is limited to only security interests that are subject to Revised Article 9 (*i.e.,* Article 9 security interests). Revised Article 9 certainly contemplates the creation of an Article 9 security interest in a fixture. Mich. Comp. Laws Ann. § 440.9109(a)(1). However, Revised Article 9 also states that its provisions are not to govern liens created in fixtures as a result of a mortgage in the underlying land except as otherwise specifically provided.

> (4) This article does not apply to any of the following:
>
> \*    \*    \*    \*    \*    \*
>
> (k) The creation or transfer of an interest in or lien on real property, including a lease or rents thereunder, except to the extent that provision is made for 1 or more of the following:
>
> > (*i*) Liens on real property in sections 9203 and 9308.[23]
> >
> > (*ii*) Fixtures in section 9334.
> >
> > (*iii*) Fixture filings in sections 9501, 9502, 9512, 9516, and 9519.[24]

---

**22.** Mich. Comp. Laws Ann. § 440.9317(1) in its entirety states that:
(1) A security interest or agricultural lien is subordinate to the rights of 1 or more of the following:
(a) A person entitled to priority under section 9322.
(b) Except as otherwise provided in subsection (5), a person becomes a lien creditor before the earlier of the following:
(*i*) The time the security interest or agricultural lien is perfected.
(*ii*) The time 1 of the conditions specified in section 9203(2)(c) is met and a financing statement covering the collateral is filed.

**23.** Mich. Comp. Laws Ann. § 440.9203(7) and Mich. Comp. Laws Ann. § 440.9308(5) state that a perfected security interest in a right to payment or performance secured by a mortgage or other real property lien results in a perfected Article 9 security interest also attaching to the mortgage or lien securing that right to payment or performance.

**24.** Mich. Comp. Laws Ann. §§ 440.9501, 440.9502, 440.9512, 440.9516, and 440.9519 all relate to the procedures to perfect the fixture filing needed to give an Article 9 security interest in fixtures priority over a mort-

(*iv*) Security agreements covering personal and real property in section 9604.[25]

Mich. Comp. Laws Ann. § 440.9109(4)(k).

The Section 9–109(4)(k) exception to Revised Article 9[26] is convoluted. Therefore, it is helpful to dissect it into its constituent parts. First, subsection (1)(a) of Section 9–109[27] establishes the general rule that a consensual lien in personal property is governed by Revised Article 9 even if the lien is created after the personal property has become affixed to real property. Second, subsection (4)(k) of this same section[28] creates an exception to this rule by generally excluding from the scope of Revised Article 9 liens created pursuant to real property law, including mortgage liens in fixtures. Section 9–334(2) of Revised Article 9[29] reaffirms its drafters' intent to generally exclude from Revised Article 9 mortgage liens and other real property interests. "This article [Article 9] does not prevent the creation of an encumbrance upon fixtures under real property law."[30] Finally, subsection (4)(k)(ii)[31] limits the general exception created by subsection (k). Subsection (4)(k)(ii) provides that Revised Article 9 will still apply to a mortgage lien in fixtures notwithstanding the general exclusion of such liens from the scope of Article 9 "**to the extent that** provision is made for . . . [f]ixtures in section 9334" (emphasis added). In other words, subsection (4)(k)(ii) reconciles the conflict created by Revised Article 9's inclusion within its scope of Article 9 security interests in fixtures on the one hand with Revised Article 9's exclusion from its scope of mortgage liens in fixtures on the other hand. While subsection (4)(k)[32] generally excludes mortgage liens from the provisions of Revised Article 9, subsection (4)(k)(ii) provides that Revised Article 9 will nonetheless apply **to some extent** in those instances where the same fixture is subject to both an Article 9 security interest and a mortgage lien. Specifically, subsection (4)(k)(ii) states that Section 9–334 of Revised Article 9,[33] as opposed to real property law, is to establish the priority between the competing Article 9 security interest and the mortgage lien. Section 9–334[34] in turn provides that the mortgage lien in the fixture is to have priority over an Article 9 security interest in the same fixture unless one of the exceptions in subsections (4) through (8) of Section 9–334 applies.[35]

gage lien in the same fixture. Mich. Comp. Laws Ann. § 440.9334.

25. Mich. Comp. Laws Ann. § 440.9604 sets forth the enforcement options available to a creditor who relies upon a single agreement to assert both an Article 9 security interest in personal property and a mortgage lien in real property.

26. Mich. Comp. Laws Ann. § 440.9109(4)(k).

27. Mich. Comp. Laws Ann. § 440.9109(1)(a).

28. Mich. Comp. Laws Ann. § 440.9109(4)(k).

29. Mich. Comp. Laws Ann. § 440.9334(2).

30. *See also* Mich. Comp. Laws Ann. § 440.9102(1)(ff) ("Encumbrance" means a right, other than an ownership interest, in real property.") and Mich. Comp. Laws Ann. § 440.9102(1)(aaa) ("Mortgage" means a consensual interest in real property, including fixtures, which secures payment or performance of an obligation.").

31. Mich. Comp. Laws Ann. § 440.9109(4)(k)(ii).

32. Mich. Comp. Laws Ann. § 440.9109(4)(k).

33. Mich. Comp. Laws Ann. § 440.9334.

34. *Id.*

35. Subsections (k)(i), (iii), and (iv) of Section 9–109(4) [Mich. Comp. Laws Ann. § 440.9109(4)(k)(i), (iii), and (iv) ], complete the reconciliation of Revised Article 9 and real property law as they relate to competing

Therefore, the rule concerning mortgage liens as they relate to Revised Article 9 is: A mortgage lien in a fixture is subject to Revised Article 9 only to the extent Section 9–334 [36] establishes priority with respect to a competing Article 9 security interest in the same fixture or to the extent one of the other subparts to Section 9–109(4)(k) [37] applies. However, apart from these limited exceptions, mortgage liens in fixtures are not governed by Revised Article 9. For example, the creation of a mortgage lien in fixtures is governed by real property law, not Revised Article 9. Likewise, the priority of a mortgage lien in a fixture vis-a-vis a competing mortgage lien in the same fixture is also governed by real property law.

Revised Article 9's recognition that enforceable creditor liens against fixtures may be created both inside and outside the scope of the Uniform Commercial Code reflects the ambiguous nature of fixtures. A machine can transform from personal property to a fixture (i.e., real property) and back again to personal property as its relationship to a parcel of real property changes. Revised Article 9 permits a creditor to take an Article 9 security interest in that machine before it becomes a fixture and even after it becomes a fixture. However, Revised Article 9 does not prohibit a mortgage lien arising under general real property law from also being created in that same machine after it has become affixed to real property. Rather, Revised Article 9 establishes rules to reconcile the conflicts created by the intersection of these two bodies of law. Those rules are set forth in Section 9–334 of Revised Article 9.[38]

Article 9 interests and mortgage liens in the same fixtures.

**36.** Mich. Comp. Laws Ann. § 440.9334.

■ The November 13, 1998 mortgage lien held by Countrywide in the Gregorys' manufactured home is therefore not subject to Revised Article 9. Consequently, the Chapter 7 trustee, as a hypothetical lien creditor, cannot rely upon Mich. Comp. Laws Ann. § 440.9317(1)(b) to avoid Countrywide's mortgage lien because that section applies to only Article 9 security interests. That is, Mich. Comp. Laws Ann. § 440.9317(1)(b) permits a bankruptcy trustee, as a hypothetical judgment lien creditor, to subordinate unperfected "security interests" in personal property and fixtures. However, the power afforded by Mich. Comp. Laws Ann. § 440.9317(1)(b) is limited to only those security interests that fall within the scope of Revised Article 9 (i.e., Article 9 security interests) since mortgage liens in fixtures are outside the scope of Revised Article 9, Mich. Comp. Laws Ann. § 440.9109(4)(k), mortgage liens in fixtures are exempt from Mich. Comp. Laws Ann. § 440.9317(1)(b)

Nor can the Chapter 7 trustee rely upon Mich. Comp. Laws Ann. § 440.9334 to avoid Countrywide's mortgage lien. Mich. Comp. Laws Ann. § 440.9334(5)(d) does give priority to certain Article 9 secured creditors with a security interest in a manufactured home when the manufactured home is also subject to a mortgage lien. However, that exception is limited to Article 9 security interests and the Chapter 7 trustee does not have an Article 9 security interest in the manufactured home, hypothetical or otherwise. His rights are those of a hypothetical judgment lien creditor, not a hypothetical Article 9 secured creditor. Therefore, if the Chapter 7 trustee is

**37.** Mich. Comp. Laws Ann. § 440.9109(4)(k).

**38.** Mich. Comp. Laws Ann. § 440.9334.

to prevail in this adversary proceeding, he must look outside the confines of Revised Article 9.[39]

██ The Chapter 7 trustee's powers as a hypothetical judgment lien creditor under Section 544(a)(1) do, of course, extend beyond the boundaries of Revised Article 9. However, his powers are not of sufficient strength to defeat Countrywide's valid mortgage lien in the manufactured home. The execution of a mortgage creates a lien in the land described in that mortgage and all fixtures associated with that land. Mich. Comp. Laws Ann. § 565.154. Indeed, the mortgage need not even reference fixtures as being subject to the mortgage since any interest in fixtures automatically passes with the conveyance of any interest in the related land. *Tyler v. Hayward*, 235 Mich. 674, 676, 209 N.W. 801 (1926). The lien created by that mortgage is valid against any subsequent purchaser of the land or fixture once the mortgage is recorded. Mich. Comp. Laws Ann. § 565.29.

██ 11 U.S.C. § 544(a)(3) does give the Chapter 7 trustee the rights of a hypothetical bona fide purchaser of real property. However, that subsection explicitly excludes fixtures from its scope. *Id.* As for 11 U.S.C. § 544(a)(1), a judicial lien creditor could, under Mich. Comp. Laws Ann. § 565.29, be a good faith purchaser of the fixture (*i.e.*, the Gregorys' manufactured home). Mich. Comp. Laws Ann. § 565.34. However, the Chapter 7 trustee in this instance may not rely upon his hypothetical status as such a judgment lien creditor because Countrywide's mortgage lien in the fixture (*i.e.*, the manufactured home) was properly recorded with the Calhoun County Register of Deeds' office well before the Chapter 7 trustee became such a "purchaser."

39. Indeed, the Chapter 7 trustee's argument that he is to prevail over Countrywide under Revised Article 9 can lead to a circular result. The Chapter 7 trustee's argument is based upon the exception permitted by Mich. Comp. Laws Ann. § 440.9334(5)(d). However, assume, for the sake of argument, that a debtor owns a farm with several outbuildings, including a manufactured home, and that these outbuildings are fixtures. Assume also that the debtor has two secured creditors who claim liens in the manufactured home. Secured Creditor A's lien arises because it has a mortgage in all of the debtor's real property, including fixtures. Secured Creditor B's lien arises because it has an Article 9 security interest in all of the debtor's equipment and fixtures. Assume also that Secured Creditor A's mortgage has been properly recorded with the county register of deeds and that Secured Creditor B's name appears on the debtor's certificate of title for the manufactured home. However, assume that Secured Creditor B did not file a financing statement for the manufactured home (*i.e.*, a fixture filing) with the county register of deeds. Assume, finally, that debtor subsequently files a Chapter 7 petition for bankruptcy relief.

Creditor B's Article 9 security interest in the manufactured home is clearly subordinate to Creditor A's mortgage lien in the manufactured home notwithstanding Creditor B's name appearing on the certificate of title for the manufactured home because Creditor B's Article 9 security interest did not arise in connection with a "mobile home transaction." Mich. Comp. Laws Ann. § 440.9334(5)(d). Moreover, the Chapter 7 trustee's rights as a lien creditor would in turn be subordinate to Creditor B's Article 9 lien in the manufactured home because Creditor B had properly perfected its interest by complying with the Mobile Home Commission Act. Mich. Comp. Laws Ann. § 440.9311(1)(b)(*iv*) and 9317(1)(b). However, if one is to accept the Chapter 7 trustee's argument in this instance, Creditor A's mortgage lien in the same manufactured home would be subordinate to the Chapter 7 trustee's rights as a lien creditor because Creditor A's name did not appear on the certificate of title for the manufactured home. "Paper covers rock, scissors cut paper, rock breaks scissors, paper covers rock, etc."

## IV. *CONCLUSION*

The Chapter 7 trustee in this instance may not subordinate Countrywide's lien in the Gregorys' manufactured home because Countrywide's lien arose as the result of real property law, not as a result of Revised Article 9. Had the Gregorys' manufactured home not been a fixture, then the lien claimed by Countrywide would have been a security interest subject to Revised Article 9 and the attendant "title perfection" requirements of the Mobile Home Commission Act. However, Countrywide's lien in the manufactured home arose because Countrywide took a mortgage lien in the Gregorys' land and the manufactured home was affixed to that land. Consequently, the Chapter 7 trustee's right to set aside unperfected Article 9 security interests in that manufactured home is irrelevant. Moreover, whatever right the Chapter 7 trustee might have had as a hypothetical judgment creditor to set aside Countrywide's mortgage lien in the manufactured home was lost when Countrywide recorded its mortgage with the Calhoun County Register of Deeds office in 1998.

Therefore, for the reasons stated herein, Countrywide's motion is granted.