In re: Roy Adrin HOGGARD and Mollie Fay Hoggard, Debtors.

Marcia R. Meoli, Chapter 7 Trustee, Plaintiff,

v.

Heartwell Mortgage Corporation and Huntington Mortgage Company, Defendants.

In re: Donald Edward Perry and Patricia Jane Perry, Debtors.

James W. Boyd, Chapter 7 Trustee Plaintiff,

v.

Greenpoint Mortgage Funding, Inc., Mortgage Electronic Registration Systems, Inc., Gmac Mortgage Corp., and Morequity, Inc., Defendants.

In re: Linda Louise Shepard, Debtor.

James W. Boyd, Chapter 7 Trustee, Plaintiff,

v.

Alliance Funding and Fifth Third Bank, Defendants.

Bankruptcy Nos. HK 03–10428, HT 02–12846, HT 03–03656. Adversary Nos. 04–88392, 04–88350, 04–88250.

United States Bankruptcy Court, W.D. Michigan.

Sept. 27, 2005.

Marcia R. Meoli, Esq., Holland, for Marcia R. Meoli, Chapter 7 Trustee.

Kelly A. Myers, Esq., Brighton, for Heartwell Mortgage Corporation and Fifth Third Bank.

Kelly M. Hagan, Esq., Acme, for James W. Boyd, Chapter 7 Trustee.

Robert E.L. Wright, Esq., Grand Rapids, for Defendants Greenpoint Mortgage Funding, Inc., Mortgage Electronic Registration Systems, Inc., GMAC Mortgage Corp., and Morequity, Inc.

## *OPINION*

JEFFREY R. HUGHES, Bankruptcy Judge.

Each of these adversary proceedings involve one or more motions for summary judgment. The motions all relate to my decision in *Richardson v. Countrywide Home Loans (In re Gregory)*, 316 B.R. 82 (Bankr.W.D.Mich.2004). I determined in *Gregory* that *Boyd v. Chase Manhattan Mortgage Corp. (In re Kroskie)*, 315 F.3d 644 (6th Cir.2003) was no longer applicable because of the enactment in Michigan of Revised Article 9 of the Uniform Commercial Code. The trustees in each of these adversary proceedings contend that *Gregory* is wrong and that therefore I should not repeat my error in the cases now before me.

The defendants in the Perry Chapter 7 proceeding also argued at the hearing on their motion that the district court's decision in *Citicorp Trust Bank v. Meoli (In re Oswalt)*, 318 B.R. 817 (W.D.Mich.2004) provided additional support for their position. *Oswalt*, which was issued only days before the hearing, concluded that the Michigan legislature had rejected *Kroskie* when it enacted a subsequent amendment to the Mobile Home Commission Act, MICH. COMP. LAWS § 125.2330i.

For the reasons stated in this opinion, I reaffirm my analysis in *Gregory*. I also defer to the district court's decision in *Oswalt*. Therefore, the defendants' motions for summary judgment are granted and the trustee's motion for summary judgment in Hoggard is denied.

## I. *PROCEDURAL BACKGROUND*

### A. *Hoggard Adversary Proceeding.*

On September 15, 2004, Defendant Heartwell Mortgage Corporation ("Heartwell Mortgage") filed its motion for summary judgment and on October 22, 2004, Marcia Meoli, the Chapter 7 trustee, filed a competing motion for partial summary judgment. I heard both motions on November 4, 2004. The parties agreed at the hearing that there was no material issue of fact in dispute and that the factual circumstances in this adversary proceeding were substantially identical to those which were dispositive in connection with *Gregory*. Heartwell Mortgage further agreed that it would withdraw its request that its motion be granted for any of the alternative reasons submitted in its brief if I granted its motion based upon the reasoning expressed in *Gregory*.

### B. *Perry Adversary Proceeding.*

On November 11, 2004, the Perry defendants filed their motion for summary judgment. I heard that motion on December 17, 2004. The parties agreed that there were no material facts in dispute and that the circumstances were virtually identical to *Gregory*. The parties also agreed at the hearing that the Perry defendants could raise the district court's decision in *Oswalt* as an alternative theory for granting their motion.

### C. *Shepard Adversary Proceeding.*

On October 25, 2004, Fifth Third Bank filed its motion for summary judgment. I heard that motion on December 17, 2004. As with the other cases, the parties agreed that there were no material issues in dispute and that the circumstances were virtually identical to *Gregory*. Indeed, Fifth Third Bank did not offer oral argument at the hearing. Its counsel also represented Heartwell Mortgage in the Hoggard adversary proceeding and, therefore, its position had already been articulated in conjunction with Heartwell Mortgage's motion for summary judgment in that proceeding.

## II. *OPINION*

### A. *Gregory Decision.*

■ *Gregory* re-examines the Sixth Circuit's decision in *Boyd v. Chase Manhattan Mortgage Corp. (In re Kroskie)*, 315 F.3d 644 (6th Cir.2003), in light of the Michigan legislature's subsequent enactment of Revised Article 9 to the Uniform Commercial Code. *Kroskie* involved a bankruptcy trustee's power to avoid a creditor's lien in a manufactured home that had become a fixture. The panel in *Kroskie* held that the lien could be avoided unless the creditor's name appeared on the manufactured home's certificate of title as required by the Mobile Home Commission Act, MICH. COMP. LAWS § 125.2331, *et seq.* However, I concluded in *Gregory* that the Michigan legislature's enactment of Revised Article 9, MICH. COMP. LAWS § 440.9101—440.9709 (eff. July 1, 2001), superceded *Kroskie* with respect to this issue and that Revised Article 9, when read in conjunction with the Mobile Home Commission Act and Michigan real property law, does not require the mortgage creditor's name to appear on the certificate of title for an affixed manufactured home in order to overcome a bankruptcy trustee's effort to avoid the mortgage creditor's lien.

### 1. *Hoggard Adversary Proceeding.*

■ The Hoggard trustee asserts that *Kroskie* continues to be good law because the Mobile Home Commission Act regulates not only the perfection of a security interest in a manufactured home but also the creation of that security interest.[1] However, she misreads the act. The section she cites as support for her proposition begins with this opening clause:

[I]f an owner named in a certificate of title **creates a security interest** in the mobile home described in the certificate:

\* \* \* \* \* \*

MICH. COMP. LAWS § 125.2330d(1) (emphasis added).

The remainder of subsection (1) then describes how the holder of the newly created security interest referenced in this clause goes about perfecting that security interest by placing its name upon the manufactured home's certificate of title. In other words, MICH. COMP. LAWS § 125.2330d(1) is predicated upon the assumption that the security interest in the mobile home has already been created. If that predicate has been met, then, and only then, do the procedures set forth in MICH. COMP. LAWS § 125.2330d(1) apply.

The distinction between the creation of a security interest in a manufactured home and the perfection of that security interest is crucial. The problem presented in these adversary proceedings and in *Gregory* arises because the Mobile Home Commission Act, Revised Article 9, Michigan real property law and the Bankruptcy Code all collide when the owner of a manufactured home attached to real property seeks bankruptcy relief and a creditor claims a lien interest in the affixed home. As I explained in *Gregory*, certain aspects of this "collision" are reconciled by referring to the Mobile Home Commission Act. Specifically, the Mobile Home Commission Act dictates how an Article 9 security interest claimed in a manufactured home is to be perfected. *Gregory*, 316 B.R. 82 at 90–91.

---

**1.** "Other provisions of the MHCA [Mobile Home Commission Act] provide that:

 \* \* \* \* \* \*

 2. A security interest in a mobile home **shall be** created by filing an application with the Secretary of State office, MCL 125.2330d(1).

Hoggard Trustee's October 22, 2004 Brief, p. 6" (emphasis added by trustee).

However, the relevance of the Mobile Home Commission Act ends there. The resolution of other issues concerning competing interests in the manufactured home are left to Revised Article 9, the Bankruptcy Code, and Michigan real property law. To the point, the issue of whether a bankruptcy trustee may avoid a lender's mortgage lien in a manufactured home is ultimately a question of priority, not perfection. Therefore, the resolution of this issue must turn on reconciling Revised Article 9, the Bankruptcy Code, and Michigan real property law. Reference to the Mobile Home Commission Act is simply unnecessary.[2]

The Hoggard trustee argues that *Gregory* is wrong because Revised Article 9 is substantively no different from former Article 9 with respect to those provisions relating to manufactured homes. She reasons, therefore, that the Sixth Circuit would not even entertain the suggestion that Michigan's enactment of Revised Article 9 requires a re-examination of the issues presented in *Kroskie*.

However, Revised Article 9 replaced former Article 9 *in toto*. Not a single section of the former article escaped the Michigan legislature's axe in 2000. It is important to remember that *Kroskie* itself reflects the Sixth Circuit's efforts to divine the Michigan legislature's intent in the face of a statutory conflict involving former Article 9. Consequently, it is hard to believe that the Michigan legislature's wholesale replacement of former Article 9 with Revised Article 9 would not prompt the Sixth Circuit to at least confirm that its reasoning under former Article 9 as expressed in *Kroskie* holds equally true under Revised Article 9.

I also reject the Hoggard trustee's contention that Revised Article 9 is substantially the same as former Article 9 with respect to the issues addressed in *Kroskie*. Revised Article 9 is clearly different from former Article 9 with respect to security interests in manufactured homes. Unlike former Article 9, Revised Article 9 specifically references manufactured homes as a unique type of collateral in which an Arti-

---

**2.** Indeed, the Hoggard trustee appears incapable of distinguishing perfection of a security interest in a manufactured home from the other aspects of creating and enforcing a security interest in such collateral. For example, she states in her brief that:

> [t]he **Kroskie** court, in interpreting the MHCA [Mobile Home Commission Act] found legislative intent to have the MHCA provide the exclusive method of perfecting such security interests, whether or not the mobile home is affixed to real estate. **Id.** @ 648. This portion of the **Kroskie** decision was based upon specific sections of the MHCA. If the legislature intended to change this by adopting the Revised UCC, it should have amended those sections of the MHCA. Otherwise, the legislature has created a situation where its statutes are in unresolvable conflict, which simply does not make sense and is against all of the principles of statutory interpretation.

Trustee's October 22, 2004 Brief at p. 10.

I agree with the Hoggard trustee that the MHCA provides the exclusive method for perfecting an Article 9 security interest in manufactured homes and that the Michigan legislature would have had to amend the pertinent sections of the MHCA to alter the procedure to perfect such interests. However, the perfection provisions of the MHCA have nothing to do with either the creation of an Article 9 security interest in a manufactured home or, more to the point, the priority of that Article 9 security interest vis-a-vis the priority of a mortgage lien in the same manufactured home created under real property law. The Hoggard trustee's argument ultimately fails because of her fixation on the MHCA and her attendant failure to identify anything within Revised Article 9 itself to support her contention that a bankruptcy trustee's rights as a hypothetical lien creditor are superior to those of a lien creditor who claims a mortgage interest in a manufactured home that was both created and properly perfected under applicable real property law.

cle 9 security interest may be taken. Not only does Revised Article 9 define a manufactured home, MICH. COMP. LAWS § 440.9102(1)(aaa), but Revised Article 9 also identifies a "manufactured-home transaction" as a particular type of secured transaction involving a manufactured home. MICH. COMP. LAWS § 440.9102(1)(bbb). Revised Article 9 then specifically addresses the relationship between Article 9 security interests taken in manufactured homes and competing mortgage liens taken in the same manufactured homes. MICH. COMP. LAWS § 440.9334.

As explained in *Gregory*, Revised Article 9 creates a statutory scheme whereby a creditor may take an Article 9 security interest in a manufactured home regardless of whether the manufactured home is affixed or not to real property. MICH. COMP. LAWS § 440.9109(1)(a). However, Revised Article 9 recognizes that a creditor may also create a lien in a manufactured home that is affixed to real property by taking a mortgage in the underlying property. MICH. COMP. LAWS §§ 440.9109(4)(k) and 440.9334(2). Obviously, Revised Article 9's recognition that two bodies of Michigan law could govern competing creditor interests in the same item of property (*i.e.*, a manufactured home) creates the potential for conflict. Indeed, it is the conflict between secured transaction law and real property law which creates the dispute that gives rise to these adversary proceedings.

Revised Article 9 reconciles this conflict through the inclusion of MICH. COMP. LAWS § 440.9334. *See also*, MICH. COMP. LAWS § 440.9109(4)(k)(ii). Section 440.9334 replaced repealed Section 440.9313. I agree with the Hoggard trustee that Section 440.9334 does incorporate many of the pro-

visions of repealed Section 440.9313. For example, Section 440.9334(2) is identical to former Section 440.9313(3). Each provides that "this article [Article 9] does not prevent creation of an encumbrance upon fixtures under real property law." MICH. COMP. LAWS § 440.9334(2) and MICH. COMP. LAWS § 440.9313(3) (repealed).

However, Section 440.9334 also includes at least one provision for which there is no counterpart in repealed Section 440.9313. Subsection (3) of MICH. COMP. LAWS § 440.9334 establishes the general rule that a mortgage lien or other encumbrance in a fixture arising under real property law is to have priority over a competing Article 9 security interest in the same fixture.

> In cases not governed by sections (4) through (8) [Mich. Comp. Laws Ann. §§ 440.9334(4)—(8) ], a security interest in fixtures is subordinate to a conflicting interest of an encumbrancer or owner of the related real property other than the debtor.

MICH. COMP. LAWS § 440.9334(3).[3]

Subsection (5)(d) of this same section then carves out from this general rule a specific exception for manufactured homes that may become a fixture. This exception provides that an Article 9 security interest in a manufactured home that is or will become a fixture takes priority over a competing mortgage lien in the same manufactured home notwithstanding Section 440.9334(3) **if, but only if:**

> (a) the Article 9 security interest is created in connection with a manufactured-home transaction (*see*, MICH. COMP. LAWS § 440.9102(1)(bbb)); and

> (b) the Article 9 security interest in the manufactured home is perfected con-

---

**3.** Section 440.9334(3)'s counterpart under former Article 9 was Section 440.9334(7).

MICH. COMP. LAWS § 440.9334(7) (repealed).

sistent with the provisions of the Mobile Home Commission Act.

*See,* MICH. COMP. LAWS § 440.9334(5)(d).

There is no counterpart to subsection (5)(d) of the revised article under former Article 9.

The Hoggard trustee also relies upon comment 10 of the Official Comments to Revised Article 9–334 [MICH. COMP. LAWS § 440.9334] as evidence that the Michigan legislature agreed with the Sixth Circuit's decision in *Kroskie* when it enacted Revised Article 9. Comment 10 states:

> 10. **Priority in Fixtures: Manufactured Homes.** A manufactured home may become a fixture. New subsection (e)(4) contains a special rule granting priority to certain security interests created in a "manufactured home" as part of a "manufactured-home transaction" (both defined in Section 9–102). Under this rule, a security interest in a manufactured home that becomes a fixture has priority over a conflicting interest of an encumbrancer or owner of the real property if the security interest is perfected under a certificate-of-title statute (see Section 9–311). Subsection (e)(4) is only one of the priority rules applicable to security interests in a manufactured home that becomes a fixture. **Thus, a security interest in a manufactured home which does not qualify for priority under this subsection may qualify under another.**

Comment 10, Uniform Commercial Code Comments, MICH. COMP. LAWS § 440.9334 (emphasis added).

However, as discussed in a moment, the unambiguous language of Revised Article 9 itself does not support the liberal interpretation the Hoggard trustee wishes to give to this comment. Indeed, the only purpose of the last sentence of Comment 10 is to state what should be obvious: that the inability of an Article 9 secured creditor to establish priority over a competing mortgage lien in a manufactured home under subsection (5)(d) of MICH. COMP. LAWS § 440.9334 (*i.e.,* Section 440.9334(e)(4) of Revised Article 9) does not mean that the Article 9 secured creditor could not still prevail based upon another subsection of MICH. COMP. LAWS § 440.9334. For example, the Article 9 secured creditor would have priority over a competing mortgage lien in the same manufactured home even if the Article 9 secured creditor did not qualify under MICH. COMP. LAWS § 440.9334(5)(d) if the Article 9 secured creditor also qualified under MICH. COMP. LAWS § 440.9334(6)(b).[4]

2. *Shepard / Perry Adversary Proceedings.*

The Shepard/Perry trustee also argues that *Kroskie* should continue to control notwithstanding the subsequent enactment of Revised Article 9. However, unlike his colleague, the Shepard/Perry trustee agrees that the Mobile Home Commission Act is relevant only with respect to how an Article 9 security interest in a manufactured home is perfected. Moreover, the Shepard/Perry trustee goes beyond the Hoggard trustee's argument that *Kroskie* should continue to control simply because of the similarity between Revised Article 9 and former Article 9 to argue that Revised Article 9 itself dictates the same result as that reached by the Sixth Circuit in *Kroskie* when it interpreted this issue under former Article 9.[5]

---

4. MICH. COMP. LAWS § 440.9334(b) gives the Article 9 secured creditor priority over the competing mortgage creditor if the debtor has the unilateral right to remove the affixed manufactured home from the real property subject to the mortgage creditor's lien.

5. The Shepard/Perry trustee's approach is certainly sounder from an analytical point of

■ The Shepard/Perry trustee argues in particular that Section 9–317(1) of Revised Article 9 codifies the result reached by the Sixth Circuit in *Kroskie* when it interpreted former Article 9. That section, as now enacted in Michigan, reads as follows:

(1) A security interest or agricultural lien is subordinate to the rights of 1 or more of the following:

(a) A person entitled to priority under section 9322.

(b) Except as otherwise provided in subsection (5), a person that becomes a lien creditor before the earlier of the following:

(*i*) The time the security interest or agricultural lien is perfected

(*ii*) The time 1 of the conditions specified in section 9203(2)(c) is met and a financing statement covering the collateral is filed.

MICH. COMP. LAWS § 440.9317(1).

His argument is straightforward:

1. MICH. COMP. LAWS § 440.9317(1) subordinates unperfected security interests to the rights of a bankruptcy trustee.[6]

2. A mortgage lien in a manufactured home is not perfected unless the lien creditor's name appears on the certificate of title for the manufactured home.

3. Therefore, the rights of a mortgage lien creditor whose name is not on the certificate of title for a manufactured home when the debtor files his bankruptcy petition are subordinate to the rights of the bankruptcy trustee when the manufactured home becomes subject to the debtor's bankruptcy proceeding.

The flaw in the Shepard/Perry trustee's argument is that he includes mortgage liens within the meaning of security interest as that term is used in MICH. COMP. LAWS ANN. § 440.9317(1). He cites other Michigan statutes for his proposition that a mortgage lien and a security interest are synonymous.[7] However, the Shepard/Perry trustee ignores the fact that "security

---

view. The continuing validity of *Kroskie* must ultimately rest upon what Revised Article 9 requires and, not what former Article 9 said, for Revised Article 9 is now the manifestation of the Michigan legislature's intent as it relates to Article 9 security interests.

6. "Lien creditor" is a defined term. It includes a bankruptcy trustee. MICH. COMP. LAWS § 440.9102(zz)(*iii*).

7. The pertinent section of the Shepard/Perry trustee's brief reads as follows:

There are several other examples of the Michigan legislature's use of the term "security interest" as including mortgages and other liens on real property. Under both the MORTGAGE BROKERS, LENDERS, AND SERVICERS LICENSING ACT (M.C.L. § 445.1651 *et seq.*) and THE SECONDARY MORTGAGE LOAN ACT (M.C.L. § 493.51 *et seq.*), it is a violation to "Take a *security interest* in *real property* before closing the *mortgage* loan to secure

payment of fees assessed in connection with a mortgage loan application." M.C.L. § 445.1672(m) and § 493.74(2)(j). Likewise, in the NATURAL RESOURCES AND ENVIRONMENTAL PROTECTION ACT (M.C.L. § 324.101 *et seq.*), the Michigan legislature defines "security interest" as:

any interest, including a reversionary interest, *in real property* created or established for the purpose of securing a loan or other obligation. *Security interests include*, but are not limited to, *mortgages*, deeds of trusts, liens, and title pursuant to lease financing transactions. M.C.L. § 324.20101(1)(gg) (emphasis added).

As these examples show, the Michigan legislature has regularly used the term "security interest" to include mortgages and liens on real property. In contrast, CMMC provided not one example in which the legislature defines "security interest" to exclude mortgages and liens on real property.

Shepard/Perry Trustee's Brief, p. 19.

interest" itself is a defined term within Revised Article 9.

> **"Security interest" means an interest in personal property or fixtures which secures payment or performance of an obligation.** The term also includes any interest of a consignor and a buyer of an account, chattel paper, a payment intangible, or a promissory note in a transaction that is subject to article 9.
>
> \* \* \* \* \* \*

MICH. COMP. LAWS § 440.1201(37) (emphasis added).

Moreover, MICH. COMP. LAWS § 440.9109(4)(k) specifically excludes from the scope of Revised Article 9 mortgage liens created in real property. Simply put, mortgage liens in fixtures are not Article 9 security interests. *Gregory,* 316 B.R. 82 at 96–98. Granted, if conflicts arise with respect to the enforcement of an Article 9 security interest in a fixture vis-a-vis the enforcement of a competing mortgage lien in the same fixture, then the Michigan legislature has directed that the conflict is to be reconciled by applying the rules set forth in MICH. COMP. LAWS § 440.9334. However, the application of Revised Article 9 to mortgage liens in fixtures extends no further than that. It has no bearing on how such a lien is created or, more to the point, how such a lien relates to the rights of a bankruptcy trustee as a hypothetical lien creditor.

Indeed, a circular argument would result if, as the Shepard/Perry trustee would have it, MICH. COMP. LAWS § 440.9317 were interpreted to include mortgage liens in manufactured homes. Assume that a Michigan farmer files for chapter 7 relief and that the farmer's property includes numerous outbuildings that have become affixed to his land. One of these outbuildings is a manufactured home.

The farmer is indebted to Secured Creditor A on account of various non-purchase money loans. Secured Creditor A's loan is secured by a mortgage in all of the farmer's land and all of the items affixed to it, including the manufactured home. Secured Creditor A properly recorded its mortgage lien with the county register of deeds outside the 90–day preference period. However, Secured Creditor A never had its name added to the certificate of title for the manufactured home.

The farmer is also indebted to Secured Creditor B on other non-purchase money loans. However, Secured Creditor B's loan is secured by an Article 9 security interest in all of the farmer's equipment and fixtures. Therefore, its Article 9 security interest also includes the manufactured home. Secured Creditor B filed a financing statement with the secretary of state's office outside the 90–day preference period. It also had its name placed on the certificate of title for the manufactured home outside the 90–day preference period. However, Secured Creditor B did not file with the county register of deeds a financing statement for the manufactured home (*i.e.,* a fixture filing).

Secured Creditor A, Secured Creditor B, and the bankruptcy trustee must now determine who is entitled to the proceeds realized from the liquidation of the manufactured home. Creditor A's mortgage lien in the manufactured home is clearly superior to Creditor B's Article 9 security interest. While Creditor B's name does appear on the certificate of title, Creditor B's Article 9 security interest did not arise in connection with a "manufactured home transaction." MICH. COMP. LAWS § 440.9102(1)(bbb). Therefore, MICH. COMP.LAWS §§ 440.9334(3) and (5)(d) give priority in the manufactured home to Secured Creditor A.

It is equally clear that Secured Creditor B's Article 9 security interest in the manufactured home is superior to the rights of the bankruptcy trustee. Secured Creditor B properly perfected its Article 9 security interest in the manufactured home by placing its name of the certificate of title pursuant to Michigan's Mobile Home Commission Act. Consequently, MICH. COMP. LAWS § 440.9317(1)(b) may not be used by the bankruptcy trustee to subordinate Secured Creditor B's Article 9 security interest in the manufactured home to the competing interests of the bankruptcy trustee.

However, if, as the Shepard/Perry trustee would have it, "security interest" as that term is used in MICH. COMP. LAWS § 440.9317 also includes mortgage liens in fixtures, then the bankruptcy estate's interest in the manufactured home would clearly be superior to Secured Creditor A's competing mortgage lien because Secured Creditor A's name is not on the certificate of title for the manufactured home. "Paper covers rock, scissors cut paper, rock breaks scissors, paper covers rock, . . . ." Of course, the parties to this hypothetical do not end up chasing their tails when MICH.COMP.LAWS § 440.9317(1) is properly limited to only Article 9 security interests. Secured Creditor A's mortgage lien in the manufactured home clearly is superior to Secured Creditor B's Article 9 security interest, which in turn is clearly superior to the bankruptcy estate's interest.

 The Shepard/Perry trustee also relies upon MICH. COMP. LAWS § 125.2330i, which was recently added to the Mobile Home Commission Act, as evidence that the Michigan legislature did not intend to change the result in *Kroskie* when it enacted Revised Article 9. However, the Shepard/Perry trustee's reliance upon supposed legislative intent under the circumstances is questionable. He concedes that Revised Article 9 requires a result contrary to that determined by *Kroskie* under former Article 9 if, as I have just established, MICH. COMP. LAWS § 440.9317(1), excludes from Revised Article 9's provisions mortgage liens created in manufactured homes. Nonetheless, he asserts that a court, when asked to enforce Revised Article 9, must ignore the unambiguous language of that legislative enactment in deference to a prior judicial interpretation of the former statute it replaced based upon an inference that supposedly can be made from yet another statute. It is one thing to rely upon legislative intent to clarify what is otherwise an ambiguous provision within a statute. However, it is an entirely different matter when legislative intent is used to rationalize an outcome that is contrary to the result the statute itself unambiguously dictates.

I am also unable to read into MICH. COMP. LAWS § 125.2330i the inferences the Shepard/Perry trustee wishes to make. The subsections he relies upon relate to the cancellation by a homeowner or a mortgagee of a certificate of title associated with a manufactured home that had become affixed to real property. I do not read these subsections as an affirmation of *Kroskie*. Rather, I interpret them as simply an effort to eliminate problems encountered by homeowners and mortgagees when attempting to transfer ownership of both land and an affixed manufactured home. If anything, these subsections reaffirm the fact that rules must be established to minimize conflict when combinations such as liens, real property, and manufactured homes cause several bodies of law to converge. Indeed, the subsections of MICH. COMP. LAWS § 125.2330i referenced by the Shepard/Perry trustee resolve conflicts between the Mobile Home Commission Act and real property law in the same manner as MICH. COMP. LAWS

§ 440.9337 resolves conflicts between Revised Article 9 and real property law.

### B. *Oswalt Decision.*

The bill that the Michigan legislature passed when it amended the Mobile Home Commission Act in 2003 included what the bill itself characterized as an "enacting section."

Enacting section 1. It is the intent of this legislature that a security interest or lien on a mobile home affixed to real property may be perfected in the manner provided under law for perfecting a lien on real property, and not exclusively by a notation of the security interest or lien on the certificate of title.

*See,* Historical and Statutory Notes, MICH. COMP. LAWS ANN. § 125.2330i.

However, this section is **NOT** part of what was actually added to the Mobile Home Commission Act. Rather, this section is simply part of the bill that enabled the legislature to enact the amendment. In other words, the "enacting section" is nothing more than legislative history.

Ironically, this "enacting section" offers the only apparent support for the trustees' contention that Revised Article 9 does not change the outcome reached in *Kroskie.* MICH. COMP. LAWS § 125.2330i was added to the Mobile Home Commission Act after Revised Article 9 was enacted. Consequently, one can legitimately ask why the Michigan legislature felt compelled to add this "enacting section" to its 2003 amendment of the Mobile Home Commission Act if it had already negated the affect of *Kroskie* through its enactment of Revised Article 9 in 2001. Frankly, my only response to this question is to repeat the time worn adage that the passage of legislation, like the making of sausage, is best left unseen. There are certainly several explanations for why this enacting section was included by the legislature. However, which of those explanations, if any, is the correct one will perhaps never be answered.

In any event, what is quite clear is that the Michigan legislature did enact Revised Article 9 after *Kroskie* was decided and Revised Article 9 unambiguously requires an outcome different from the one reached in *Kroskie* under former Article 9. Granted, the Michigan legislature did not expressly reject *Kroskie* when it enacted Revised Article 9. However, a legislative body is not obligated to include a written commentary as to the effect of its actions upon prior statutory interpretations by the judiciary each and every time it changes those statutes. The fact that the language of the newly enacted statute itself contradicts the prior judicial interpretation is enough.

As for the applicability of this "enacting section" in the instant case, I concluded in *Gregory* that it had no relevance because it was not part of what the Michigan legislature had actually added to its statutes when it acted in 2003. *Gregory,* 316 B.R. 82 at 85–87. However, the district court in *Oswalt* has ruled the Michigan legislature's addition of MICH. COMP. LAWS § 125.2330i did change the outcome required by *Kroskie* and that the change effected by this addition applied retroactively to matters arising prior to its enactment. I cannot determine from *Oswalt* whether the district court considered my reasons in *Gregory* for coming to the opposite conclusion. In any event, I defer to the district court's reasoning in *Oswalt* and, therefore, I conclude that the defendants' motion for summary judgment in Perry must be granted for the alternative reason that *Kroskie* is no longer applicable because of the enactment of MICH. COMP. LAWS § 125.2330i.

## *CONCLUSION*

For the reasons stated in this opinion, the defendants' motion for summary judgment in the adversary proceedings filed in Hoggard, Perry, and Shepard are granted and the Hoggard trustee's motion for partial summary judgment in the adversary proceeding filed in Hoggard is denied. The court will issue separate orders in each of the adversary proceedings consistent with this opinion.